Craig H. COVER, Plaintiff,

v.

HYDRAMATIC PACKING CO., INC., Defendant/Countercross–Claimant/Appellant,

v.

SEA GULL LIGHTING, INC., Defendant/Cross–Claimant/Appellee.

No. 95–1382.

United States Court of Appeals, Federal Circuit.

May 9, 1996.

Stanley B. Kita, Howson & Howson, Spring House, Pennsylvania, argued for defendant/countercross-claimant/appellant.

Gregory J. Lavorgna, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, Pennsylvania, argued for defendant/cross-claimant/appellee.

Before RICH, MICHEL and PLAGER, Circuit Judges.

RICH, Circuit Judge.

Appellant Hydramatic Packing Co. (Hydramatic) appeals from the judgment of the United States District Court for the Eastern District of Pennsylvania concluding that Hydramatic's state law claim against Appellee Sea Gull Lighting, Inc. (Sea Gull) is precluded because the state statute is preempted by federal patent law. *Cover v. Hydramatic Packing Co. & Sea Gull Lighting, Inc.*, No. 93–6400, 1995 WL 596778 (E.D.Pa. May 30, 1995). We reverse and remand.

## BACKGROUND

Plaintiff Craig H. Cover (Cover) commenced this case in late 1993 as a patent infringement action in which he sued Hydramatic for contributory infringement and Sea Gull for direct infringement of his U.S. Patent No. 4,605,992 ('992 patent). Hydramatic counterclaimed, seeking a declaratory judgment that the '992 patent was unenforceable due to inequitable conduct before the Patent and Trademark Office. Hydramatic also filed a cross-claim against Sea Gull for indemnification under § 2312(c) of the Uniform Commercial Code, which Pennsylvania has adopted.

The '992 patent describes a lighting fixture system having a batt of thermal insulation to protect the wiring from heat produced by a bulb. Hydramatic manufactures insulation products based on the specifications of its customers. Sea Gull, a lighting fixture manufacturer, produced certain lighting fixtures that incorporated multi-layered batts of insulation manufactured to its specifications by Hydramatic. Cover's infringement action was premised on Sea Gull's manufacture of lighting fixtures containing the insulation parts obtained from and manufactured by Hydramatic.

On January 21, 1986, Cover entered into an exclusive license arrangement with Pacor to commercialize the '992 patent. Thereafter, Pacor began to supply multi-layered batts of insulation to Sea Gull, which designated these insulation units as part numbers 6254 and 6255. Of particular relevance is the fact that Pacor did not mark the insulation

units with the number of the '992 patent in accordance with 35 U.S.C. § 287 (1988). Pacor sold these insulation units to Sea Gull until 1993.

In July of 1988, however, Sea Gull began furnishing Hydramatic with drawings and specifications to make Sea Gull part numbers 6254 and 6255. Hydramatic produced these parts in accordance with Sea Gull's specifications from July 1988 until late 1993. In 1989, Cover learned that Sea Gull was not obtaining all of its insulation units from Pacor, Cover's exclusive licensee. Rather, Cover discovered that Sea Gull was ordering insulation units from Hydramatic. As a result, Cover wrote a cease and desist letter to Hydramatic on June 5, 1989. Shortly thereafter, on October 9, 1989, Cover wrote a letter to Sea Gull, stating, in relevant part:

> To purchase these patented parts from a *known* violator [Hydramatic] of the patents is in itself a violation of the patents, and I trust that your company would not have intentionally done so.

The district court found that the October 9, 1989 letter to Sea Gull did not constitute notice of infringement. Therefore, according to the district court, since Pacor did not mark its insulation units sold to Sea Gull in accordance with 35 U.S.C. § 287(a), Sea Gull was not liable for damages, if at all, until after the complaint was filed by Cover on December 3, 1993.

Cover settled with Sea Gull before trial, and the case between them was dismissed with prejudice. Sea Gull agreed to pay Cover $75,000. Hydramatic also settled with Cover and agreed to pay him $175,000 in liquidated compensatory damages. Furthermore, Hydramatic and Cover stipulated that Hydramatic would not contest the validity, infringement, or enforceability of the '992 patent. As a result of these settlement agreements, the only claim remaining for trial was Hydramatic's cross-claim against Sea Gull for indemnification under § 2312(c).

With respect to Hydramatic's cross-claim, the district court stated that "[f]ederal law preempts state law where simultaneous compliance with state and federal law is impossible or would frustrate the purpose of federal law." On the assumption that Sea Gull was not liable for damages because it did not have notice of infringement until the complaint was filed in December of 1993,[1] the district court held that "Hydramatic's state law claim seeking to impose liability on Sea Gull is preempted." Thus, according to the district court, compliance with § 2312(c) of the Pennsylvania commercial code would frustrate the purpose of § 287(a) of the federal patent code.

Hydramatic appealed to this court. We have jurisdiction over this appeal under 28 U.S.C. § 1295.

## DISCUSSION

Under the Supremacy Clause, U.S. Const., art. VI, cl. 2, state laws are invalid if they "interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution." *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991). Inherent in our patent system is a "tension between the desire to freely exploit the full potential of our inventive resources and the need to create an incentive to deploy those resources" by granting the right to exclude to those who promote the progress of the useful arts. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 152, 109 S.Ct. 971, 978, 103 L.Ed.2d 118 (1989). In other words, there are public costs associated with the right to exclude, and our patent system seeks to maintain an efficient balance between incentives to create and commercialize and public costs engendered by these incentives.[2] Where this balance between free exploitation of knowledge and the aforesaid incentives is clear, states may not inter-

1. Hydramatic would have us decide whether the October 9, 1989 letter from Cover to Sea Gull constituted notice. However, the issue of preemption is at the heart of this appeal, and since we find that the state law is not pre-empted, notification to Sea Gull is irrelevant.

2. Public costs include (1) inflated prices, invariably absorbed by the consumer, which frequently accompany exclusive rights; and (2) overinvestment. *See* Richard A. Posner, Economic Analysis of the Law 36–37 (3d ed.1986).

vene and provide protection to subject matter that is statutorily unprotected by our patent laws. *Id.* On the other hand, "states are free to regulate the use of ... intellectual property in any manner not inconsistent with federal law." *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262, 99 S.Ct. 1096, 1099, 59 L.Ed.2d 296 (1979).

This case, one of first impression, requires us to assess the relationship between the federal patent code and Pennsylvania commercial law. Specifically, we are faced with the question of whether 35 U.S.C. § 287(a) of the patent code pre-empts § 2312(c) of the Uniform Commercial Code. Section 287(a) states, in relevant part:

> In the event of failure ... to mark [the patented article], no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

The state law warranty provision, § 2312(c), is as follows:

> **Warranty of merchant regularly dealing in goods.** Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like *but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.*

13 Pa.C.S.A. § 2312(c) (1995) (emphasis added). The emphasized final provision controls here.

■ Although in determining whether a state statute is pre-empted, "there can be no one crystal clear distinctly marked formula," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), the Supreme Court has set forth three grounds for pre-emption: (1) *Explicit pre-emption,* whereby Congress explicitly provided for pre-emption of state law in the federal statute, *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); (2) *Field pre-emption,* wherein "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); and (3) *Conflict pre-emption,* "where 'compliance with both federal and state regulations is a physical impossibility,' ... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Gade,* 505 U.S. at 98, 112 S.Ct. at 2383 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), and *Hines,* 487 U.S. at 138).

■ Applying these tests to the case at hand, it is rather clear upon reading § 287(a) of the patent code that Congress did not explicitly pre-empt state commercial law. With respect to field pre-emption, Title 35 occupies the field of patent law, not commercial law between buyers and sellers. Therefore, field pre-emption does not apply here. We are left with conflict pre-emption. Thus, we must ask ourselves whether there is such a direct conflict between § 287(a) of the patent code and § 2312(c) of Pennsylvania's commercial law that compliance with both the patent law and state law is a "physical impossibility," or whether the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting § 287(a). *Gade,* 505 U.S. at 98, 112 S.Ct. at 2383. We hold that there is no conflict pre-emption in that Pennsylvania's commercial law neither renders compliance with the patent code a "physical impossibility" nor "stands as an obstacle to the accomplishment and execution" of the patent laws.

The patent law defines rights between the patentee and persons who wish to make, use, sell or offer for sale the patented invention. Inasmuch as Sea Gull and Hydramatic settled with the patentee, the patentee and the patent code are no longer in the picture.

Sea Gull and Hydramatic remain, and their legal relationship is defined and governed by § 2312(c) of the UCC, which has nothing to do with the liability of Sea Gull and Hydramatic under the patent laws, which are simply irrelevant at this point.

Sea Gull asserts that for § 2312(c) to apply there has to be a "rightful claim" of infringement. Because the patentee, argues Sea Gull, did not mark his goods in accordance with § 287(a), there was no "rightful claim," thus saving Sea Gull from patent liability. As such, Pennsylvania's commercial code cannot impose patent liability where the patent law forbids it. This argument misses the point. By focusing on the phrase "rightful claim" in § 2312(c) and asking us to equate "rightful claim" with patent liability, Sea Gull, in essence, is making a statutory construction argument, which has the effect of avoiding the pre-emption issue.

However, pre-emption is the issue, and the focus of our inquiry is on the interaction, if any, between § 287(a) and § 2312(c). Once the patentee left the picture, so did § 287(a). There is simply nothing on the face of § 287(a) that pertains to anyone but the infringer and the patentee. At issue, therefore, is the legal relationship between two contracting parties, and it is § 2312(c) which defines this relationship. On its face, § 2312(c) shifts all costs, including attorney fees, to the buyer who furnishes a seller with specifications that leads to a "rightful claim" of infringement. This state law, unlike the state laws in previous patent pre-emption cases, does not purport to provide exclusive property rights to "creations which would otherwise remain unprotected under federal law."[3] In short, we cannot discern any conflict between §§ 287(a) and 2312(c).

Furthermore, to adopt Sea Gull's "rightful claim" argument would not lead to judicious public policy inasmuch as parties would eschew settlement and be forced to go to trial to discern whether a "rightful claim" exists under federal patent law. We cannot lend our imprimatur to such a policy.

Therefore, we reverse the district court's judgment based on its holding that compliance with Pennsylvania's commercial law would frustrate the damages limitations set forth in 35 U.S.C. § 287. We remand for further proceedings consistent with our decision.

Each side shall bear its own costs.

*REVERSED* and *REMANDED*.

**3.** *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156, 109 S.Ct. 971, 980, 103 L.Ed.2d 118 (1989). *See also, Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).