[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 02, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-14123

_____

D. C. Docket No. 96-00175-CIV-ORL-3ABF-18

TIM FOLEY, individually, CONNIE
FOLEY, individually, et al.,

  Defendants-Cross-
  Claimants-Appellees,

    versus

MAHALEEL LEE LUSTER, individually, d.b.a.
Go Diamond Productions, d.b.a. Lustervision,

  Defendant-Cross-
  Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 2, 2001)**

Before BIRCH and HULL, Circuit Judges, and TIDWELL*, District Judge.

_____

* Honorable G. Ernest Tidwell, U.S. District Judge for the Northern District of Georgia, sitting
by designation.

BIRCH, Circuit Judge:

In this opinion, we decide whether a state common law claim for indemnification is preempted by the Copyright Act, whether a jury instruction was confusing, and whether the claimants in an indemnity action were required to apportion damages among defendant Luster and others that potentially played a role in the copyright infringement. The district court denied judgment as a matter of law on all three issues and we AFFIRM.

## I. BACKGROUND

The Amway Corporation ("Amway") is a multi-level distributorship of products. Distributors are paid based on the products they sell and, more importantly, the sales of any distributors they recruit (their "down-line"). Therefore, the larger the down-line, the more money a distributor makes. In order to recruit a down-line distributor, high-level distributors hold promotional events ("functions") where they show videotapes of promotional materials, including portraits of the lifestyle of high-level distributors.

The defendants in the original consolidated cases were a group of high-level Amway distributors ("distributors") and Luster, a videographer who made videos

2

for their functions.  When Luster made these videos,[1] he included copyrighted songs without permission from the copyright owners.  A group of recording industry companies sued the distributors and Luster, and settled the case before trial.  At the same time, one group of defendants filed a cross-claim against Luster for indemnification, on the ground that he was solely responsible for the copyright infringement.  This indemnification case went to trial, and the jury found that Luster had to indemnify some of the distributors for their share of the settlement fund and attorneys' fees.[2]  Luster filed a motion for judgment as a matter of law, claiming that the Copyright Act, 17 U.S.C. §§ 101. et seq. ("the Act"), preempted the claim for indemnification under state common law, that the jury instructions were confusing, and that the distributors failed to establish a prima facie case of damages.  The district court denied the motion, and Luster appeals.

## II. DISCUSSION

---

[1]Luster argues that other videographers made some of the videos that were the subject of the trial.  However, we take the facts in the light most favorable to the non-movant, see Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999), which supports Luster's responsibility for all of the videos that are the subject of this appeal.

[2]At the trial, cross-claimants included the Foleys, the Andersons, the Haugens, the Gooches, and the Grabills.  Luster successfully defended the claims brought by the Foleys and the Gooches, so only the verdicts in favor of the Andersons, Haugens, and Grabills are at issue in this appeal.

We review the denial of a motion for judgment as a matter of law de novo, applying the same standards as the district court, and viewing the evidence and all reasonable inferences in favor of the non-movant. Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999).

## A. **Preemption**

Section 301 of the federal Copyright Act ("the Act") preempts all state causes of action based on a right found in the Act or an equivalent to such a right. The Act states that,

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). A short list of specific exceptions is delineated in section "(b)", resulting in a generally broad scope of preemption. One of those exceptions is for state common law or statutes "with respect to . . . (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(b)(3). The result of this subsection is that the Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the

4

exclusive rights provided by federal copyright law." <u>Computer Assoc. Int'l, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 716 (2d Cir. 1992) (quotations omitted).

Section 301(b)(3) has led to the development of the "extra element" test, which we adopted in <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1549 (11th Cir. 1996). Under this test, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." <u>Altai</u>, 982 F.2d at 716 (quotations omitted). Along these lines, "[a] state law claim is not preempted if the extra element changes the nature of the action so that it is <u>qualitatively</u> different from a copyright infringement claim." <u>Id</u>. (quotations omitted). For example, awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an "extra element." <u>See id</u>. at 717. In <u>Mnemonics</u>, we applied this test to Florida trade secret law, and recognized that the breach of duty essential to a trade secret case is an extra element that qualitatively distinguishes those claims from copyright claims. <u>Mnemonics</u>, 79 F.3d at 1549 (quoting <u>Altai</u>, 982 F.2d at 717). Accordingly, in <u>Mnemonics</u>, the plaintiff's trade secret cause of action based on alleged infringements of computer software and hardware copyrights was not preempted.

5

It is important to understand why this extra element test is not applicable to the case before us. The extra element test was developed to protect the "exclusive rights" of copyright holders. See Altai, 982 F.3d at 716. The Act establishes a comprehensive set of rights and remedies to protect copyrights, and preempts most state actions so that the rights and remedies will be consistent for all copyright holders. The indemnity case before us, however, does not concern the rights of a copyright holder. Rather, it concerns the allocation of responsibility between copyright infringers. Whether or not Luster indemnifies the distributors for their share of the settlement fund and attorneys' fees is "not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). Because the question before us does not fall within this provision of the Act, the exception found in § 301(b)(3) is irrelevant, and, therefore, the extra element test does not apply.[3] Instead, we apply general preemption law to determine whether an indemnity case brought pursuant to Florida common law is preempted by the Act.

---

[3]This reasoning is consistent with that applied in the context of patent law. See Cover v. Hydramatic Packing Co., 83 F.3d 1390, 1393-94 (Fed. Cir. 1996) (rejecting the argument that patent law preempts an indemnity claim brought pursuant to a state statute, because once the infringement litigation is settled, "patentee and the patent code are no longer in the picture," and the patent laws become "simply irrelevant.").

6

Under Article VI of the U.S. Constitution, federal law is the "supreme Law of the Land," and any state law that is in conflict with a federal law is preempted. See Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128-29 (1981). In an effort to explain preemption, the Supreme Court has clarified that

> Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable inference that Congress left no room for the States to supplement it.

Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992) (quotations and citations omitted). These bases for preemption are commonly referred to as explicit preemption, conflict preemption, and field preemption. When determining whether a state law is preempted under one of these bases, we look to the intent of Congress in passing the federal law. Malone v. White Motor Corp., 435 U.S. 497, 504, 98 S. Ct. 1185, 1190 (1978) ("'The purpose of Congress is the ultimate touchstone'" of preemption.) (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963)). By applying each basis for preemption to Luster's argument, we find that an indemnity claim under the common law of Florida is not preempted by the Act.


1. Explicit Preemption

7

Explicit preemption is evident when "Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."  Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977).  Section 301 explicitly preempts all claims that are covered under § 106 of the Act, if they come within the subject matter of §§ 102 and 103.[4]  These include violations of the following rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.  It is evident that the congressional intent in § 106 was to protect the rights of copyright holders, not to govern cases between infringers.  Nothing in the language of § 301 explicitly prohibits indemnity suits, nor is there a message in

---

[4]Though not relevant to this discussion, § 102 lists the tangible mediums of expression and works of authorship that are covered under the Act, and § 103 explains compilations and derivative works.

the structure of §§301 and 106 read together that implies a preemption of indemnity suits. Therefore, such suits are not explicitly preempted by the Act.

2. Conflict Preemption

Conflict preemption "arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n, 461 U.S. 190, 204, 103 S. Ct. 1713, 1722 (1983) (quotations and citations omitted). Again, a suit for indemnity between defendants in a copyright infringement case is not an obstacle to congressional intent, which was to protect copyright holders in a comprehensive and uniform way that was consistent with Article I, Section 8, clause 8 of the U.S. Constitution.[5] Further, it is certainly permissible for a plaintiff to sustain a copyright infringement suit while the defendants litigate an indemnity suit as a cross-claim. Therefore, a state indemnity suit is not barred by the principles of conflict preemption.

---

[5]That clause is a limitation on, as well as a grant of, the copyright power. See Paul J. Heald and Suzanna Sherry, "Implied Limits on the Legislative Power: the Intellectual Property Clause as an Absolute Constraint on Congress," 2000 U. ILL. L. REV. 1119 (2000).

3. Field Preemption

Finally, preemption is evident where "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1946). In this situation, "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Id. If the distributors had brought any type of copyright claim against Luster, this area of preemption may have precluded the suit. However, the Act does not touch on the field of common law indemnity, and indemnity does not intrude upon the field of rights guaranteed by the Act. Accordingly, the indemnity claim is not preempted by any of the bases for federal preemption, and the district court properly denied the motion for judgment as a matter of law on these grounds.

**B. Jury Instructions**

Luster also asks for judgment as a matter of law because the jury instructions confused vicarious liability under federal copyright law with the type of liability necessary to qualify for indemnity under Florida law. We have held that our role, "in reviewing a trial court's jury instructions, is to assure that the instructions show no tendency to confuse or to mislead the jury with respect to the applicable principles of law. We will not disturb a jury's verdict unless the charge, taken as a

10

whole, is erroneous and prejudicial." Mosher v. Speedstar Div. of AMCA Int'l, Inc., 979 F.2d 823, 824 (11th Cir. 1992) (quotations and citations omitted). We do not find that the jury instruction was erroneous and prejudicial, and accordingly, we affirm the judgment of the district court.

There is a two-part test to prevail on a claim for indemnity under the common law of Florida. "First, the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another. Second, indemnification can only come from a party who was at fault." Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 642 (Fla. 1999) (quotations and citations omitted). Accordingly, "[a] weighing of the relative fault of tortfeasors has no place in the concept of indemnity for the one seeking indemnity must be without fault." Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 493 (Fla. 1979). Luster argues that it was error to instruct the jury that "[v]icarious liability arises when someone, without knowledge that the activity infringes a copyright, has the right and ability to supervise the infringing activity and a financial interest in the activity." R21-470-5. He argues that failure to supervise constitutes partial fault and, therefore, this jury instruction allowed the jury to find for the distributors, even if they are partially at fault.

11

Viewing the jury instructions "as a whole," however, we reject this argument. The district court made clear that if the jury found that Luster was not completely responsible for the copyright infringement, it would have to find for Luster. The relevant portion of the instruction on indemnity stated:

> Plaintiffs have asserted that Defendant Luster should indemnify them for the monies they paid in settlement to the copyright holders and for their attorneys fees and expenses associated with that litigation. In order for Plaintiffs to be entitled to indemnification regarding the copyright matters, they must prove by a preponderance of the evidence, that: 1) they were without fault; 2) that their liability to the copyright holders was entirely vicarious, that is, arising solely from the acts of Defendant Luster; and 3) that Luster alone was at fault with respect to the copyright matters. All three elements must be present in order to establish a right to indemnification.
>
> As to each Plaintiff, if you find that that Plaintiff was not at fault, and that Plaintiff was vicariously liable for Defendant Luster's acts and that Defendant Luster was at fault, then your verdict should be for that Plaintiff on his or her claim for indemnity. As to each Plaintiff, if you find that a Plaintiff was at fault, or that Defendant Luster was not at fault, or that both that Plaintiff and Defendant were at fault, then your verdict is for Defendant Luster as to that Plaintiff.

R21-470-4-5. The portion that Luster quotes to make his argument is later in the instruction, in the context of the various theories of liability under which the distributors would have been found guilty of copyright infringement, but for the settlement. After the district judge explained the theories of copyright liability, he reiterated that "[i]n order to be entitled to indemnity for these amounts, Plaintiffs must show that the amounts they paid for settlement and fees were entirely

12

Luster's responsibility (as explained previously) and not based on any direct or contributory infringement by the Plaintiffs themselves." R21-470-6. It is clear that the jury understood the instruction, as they found for Luster on the claims of two distributors, where they apparently believed that Luster was not entirely at fault.

## C. **Damages**

Luster's final argument is that the distributors failed to apportion the damages between him and the other videographers appropriately. His position is that, because he presented evidence that other videographers made at least one of the videos at issue in the trial, the distributors had to correctly apportion damages and he should only be responsible for the portion attributable to the videos he made. However, as the district court stated, "Luster was sued for indemnity, not for contribution." R21-488-3. Indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." Houdaille, 374 So. 2d at 493 (emphasis added). The distributors brought a cross-claim against only Luster,[6] and the jury found for those

_____

[6] One of Luster's possible recourses in this situation was to join the other videographers as codefendants and sue them for indemnity, which he failed to do.

13

distributors. Therefore, the jury found that Luster was wholly responsible for the damages. The district court correctly denied judgment as a matter of law on this issue as well.

## III. CONCLUSION

We find that the distributors' claim for indemnification was not preempted by the Act. Therefore, the district court correctly denied judgment as a matter of law on that issue. We also conclude that the jury instructions were adequate and that the jury found that Luster was wholly responsible for the copyright infringement, as evidenced by their verdict. Accordingly, we AFFIRM.