**Robert Larry CROW, Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, Respondent.**

**No. 82–3158.**

United States Court of Appeals, Eleventh Circuit.

Dec. 2, 1983.

William J. Sheppard, Jacksonville, Fla., Elizabeth L. White, for petitioner.

Gregory C. Smith, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Robert Larry Crow appeals to this court from the district court's denial of his petition for a writ of habeas corpus. The State

---

6. *See, e.g., Harrell,* 672 F.2d at 634 (precautions taken so jury would not focus on shackles).

of Florida tried Crow in October, 1979, for selling "bootleg" eight-track tapes in violation of Fla.Stat.Ann. § 812.019 (West Supp. 1983) (prohibiting dealing in stolen property). The jury convicted Crow, and the trial judge sentenced him to five years in prison. Crow contends that we should hold the state conviction null and void because the Copyright Act, 17 U.S.C. § 101 *et seq.* (1976) (the "Act"), preempts Florida's regulation of his activities in this case. Crow's contention is valid; we therefore reverse this case and remand it to the district court with instructions to grant the writ of habeas corpus.

The evidence at trial revealed that Crow, on April 25, 1979, sold an eight-track tape recording of an album by Tammy Wynette entitled "Golden Ring." Columbia Broadcasting System (CBS) owned the copyright to the album by virtue of a contract between Wynette and CBS dated January 1, 1975; the album was copyrighted in 1976. Crow does not contest the jury's findings that he "pirated" the recording and sold the tape without paying royalties to CBS. He argues simply that, because the only "stolen property" involved in the case was the copyright of CBS (and not the physical tape itself), the Copyright Act precludes Florida from prosecuting him and renders his conviction void. The state trial and appellate courts rejected this claim. *See Crow v. State,* 392 So.2d 919 (Fla.Dist.Ct.App.1980), *aff'd,* 399 So.2d 1141 (Fla.1981). Having exhausted his state remedies, Crow is properly before this court.

Section 301 of the Act controls our decision. It states:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 and works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after

that date and whether published or unpublished are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301(a) (1976). The legislative history of section 301, which Congress passed in 1976, clearly evidences Congress' intent to overrule by statute cases such as *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) (holding that the Copyright Act of 1909 preempts only state laws *conflicting or interfering with* its provisions). The Report of the House of Representatives states:

The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a state that are *equivalent to copyright* and that *extend to works coming within the scope of the federal copyright law.* The declaration of this principle in section 301 is intended to be stated in the clearest and most unequivocal way possible, so as to foreclose any possible misinterpretation of its unqualified intention that Congress should act preemptively, and to avoid the development of any vague borderline area as between State and Federal protection.

H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 130 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5746. Thus, we must determine in this case not whether Florida's prosecution of Crow conflicts with the provisions of the Copyright Act, but whether Crow's actions violated rights "equivalent to any of the exclusive rights within the ... scope of copyright ...." 17 U.S.C. § 301(a); *see also Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978) (court must determine whether Congress has "explicitly" preempted state laws).

Section 301 in effect establishes a two-pronged test to be applied in preemption cases.[1] We must decide whether the rights

---

1. Section 301 applies only to violations occurring after January 1, 1978; it also applies only to rights "fixed in a tangible medium of expres-

sion" after February 15, 1972. 17 U.S.C. § 301 (1976). These requirements are satisfied in this case. The evidence at trial showed that the

at issue fall within the "subject matter of copyright" set forth in sections 102 and 103 and whether the rights at issue are "equivalent to" the exclusive rights of section 106. *Harper & Row, Publishers v. Nation Enters.*, 501 F.Supp. 848, 850 (S.D.N.Y.1980). The recording "Golden Ring" certainly falls within the scope of section 102(a)(7), which provides copyright protection for "sound recordings." Thus, we need only determine whether the rights at issue are equivalent to section 106 rights.

The state supports its argument that it can constitutionally [2] prosecute Crow by attempting to characterize the stolen property rights as contract rights not within the exclusive scope of section 106. These rights, argues the state, " 'belong to various performers, not under federal copyright law but under various private contracts.' " Brief of Appellee at 4, *citing Crow v. State*, 392 So.2d 919, 920 (Fla.Dist.Ct.App.1980). We do not accept this argument. CBS, the copyright holder, cannot maintain an action against Crow under state contract law because Crow was not a party to the contract by which CBS purchased the rights to "Golden Ring" from Wynette. Conversely, Crow neither sold nor purchased a right of action under the CBS/Wynette contract. The stolen property rights sold by Crow were the rights of CBS exclusively "to distribute copies or phono records of the copyrighted work" and "to reproduce the copyrighted work." 17 U.S.C. § 106(1) & (3) (1976). Given the fact situation in this case, the Copyright Act clearly affords CBS its sole remedy should it bring an action against Crow.

An example illustrates this point. Suppose the recording "Golden Ring" could not have been copyrighted but that CBS nevertheless, for purposes of this example, contracted to pay Wynette a royalty for each tape sold. Without the protection of the Act, CBS would have no action against Crow. Although state contract law could constitutionally supply the rule of decision should Wynette sue CBS for breach of contract, *see Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), state contract law both could not and would not allow CBS to prohibit Crow from selling recordings of "Golden Ring." *See Harper & Row*, 501 F.Supp. 848.

The proper method of analysis is to examine whether the elements of a cause of action for the tort of copyright infringement are equivalent to the elements of the crime of dealing in stolen property as it applies in this case. *See* 1 Nimmer on Copyright, § 1.01[b]. Despite the name given the offense, the elements essential to establish a violation of the Florida statute in this case correspond almost exactly to those of the tort of copyright infringement. The state criminal statute differs only in that it requires the prosecution to establish scienter, which is not an element of an infringement claim, on the part of the defendant. This distinction alone does not render the elements of the crime different in a meaningful way.[3] Section 506 of the Copyright Act, which sets forth criminal penalties for copyright infringement, also requires the prosecution to prove scienter as an element of the case. *See United States v. Smith*, 686 F.2d 234 (5th Cir.1982). The additional element of scienter traditionally necessary to establish a criminal case merely narrows the applicability of the statute. The prohibited act—wrongfully distributing a copyrighted work—remains the same. *See Harper & Row*, 501 F.Supp. at 853–54 ("additional elements of 'knowledge' and 'intent' required under state law do not afford ... rights ... 'different in kind'

sale of the bootleg tape occurred in 1979 and that the recording was "fixed in a tangible medium of expression" and copyrighted after 1972.

2. If section 301 prohibits the state from prosecuting Crow, the Supremacy Clause of the United States Constitution will render the conviction void. U.S. Const., art. VI, § 2.

3. Professor Nimmer also reaches this conclusion. He states, "state record piracy laws are preempted in their application to ... sound recordings under the rules set forth in section 301(a)." 1 Nimmer on Copyright, § 1.01[b] (footnote omitted) (citing section 653h of the California Penal Code).

from those protected by the copyright laws").[4]

Section 301 clearly prohibits Florida from prosecuting Crow in this case, and we conclude that Crow's conviction is null and void. We therefore REVERSE this case and REMAND it to the district court with instructions to grant the writ of habeas corpus.

---

**4.** In *Roy Export Co. v. CBS,* 503 F.Supp. 1137 (S.D.N.Y.1980), aff'd, 672 F.2d 1095 (2d Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), the court held that section 301 of the Copyright Act does not preempt the New York law of unfair competition because the New York law requires the plaintiff to allege unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent in order to state a cause of action. The logic underlying this decision has been questioned. *See* 1 Nimmer on Copyright, 1.01[b][1]. In any event, the court in *Roy Export* addressed the preemption of an unfair competition law, and *Roy Export* therefore does not control the decision in this case.