[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 27, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10370

_____

D. C. Docket No. 98-08122-CV-KLR

GENE D. LIPSCHER and
ROBERT E. KEHOE, JR.,

Appellants,

versus

LRP PUBLICATIONS, INC., a
foreign corporation, and
JOANNE FIORE,

Defendants-Appellees.

_____

No. 00-10387

_____

D. C. Docket No. 98-08122-CV-KLR

LAW BULLETIN PUBLISHING
COMPANY, an Illinois Company,

Plaintiff-Appellant,

versus


LRP PUBLICATIONS, INC., a
foreign corporation, and
JOANNE FIORE,


                                    Defendants-Appellees.


_____


No. 00-10654, 00-11461
_____


D. C. Docket No. 98-08122-CV-KLR


LAW BULLETIN PUBLISHING
COMPANY, an Illinois Company,


                                    Plaintiff-Appellee,


versus


LRP PUBLICATIONS, INC., a
foreign corporation, and
JOANNE FIORE,


                                    Defendants-Appellants.


_____


Appeals from the United States District Court
for the Southern District of Florida


_____

**(September 27, 2001)**

Before BIRCH, MARCUS and WOOD, JR.[*], Circuit Judges.

WOOD, JR., Circuit Judge:

These appeals, which were consolidated for argument and decision in this court, arise out of a lawsuit filed by Law Bulletin Publishing Company ("Law Bulletin") against LRP Publications, Inc. ("LRP") and Joanne Fiore, an employee of LRP. Law Bulletin is an Illinois company which publishes and sells the Cook County Jury Verdict Reporter and the Illinois Jury Verdict Reporter, both of which are newsletters summarizing individual jury verdicts. Law Bulletin maintains a computerized database of this information which customers can search online for a fee. LRP publishes national statistical and historical jury verdict materials including the Personal Injury Valuation Handbook. The Handbook is a nine-volume set compiling statistical information which allows an attorney to calculate a statistical range of potential jury verdicts for different types of personal injuries. LRP maintains a computerized database of its information, which is made available to customers through the online legal research companies Westlaw and Lexis, as well as on CD-ROM. LRP also offers a telephone service which allows customers

---

[*]Honorable Harlington Wood, Jr., U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

3

to call in search requests to be performed by LRP employees. Fiore was employed by LRP until 1998 and served as the Florida registered agent for LRP.[1]

In November 1997, Law Bulletin filed suit against LRP and Fiore, alleging that LRP surreptitiously obtained subscriptions to Law Bulletin's verdict reporters by posing as a Florida law firm named "Fiore and Cohen" and then used the information from the newsletters as its basis for reporting jury verdicts from Illinois. According to Law Bulletin's complaint, in April 1993, LRP requested a subscription to Law Bulletin's Illinois Jury Verdict Reporter. Law Bulletin, recognizing LRP as a competitor and a suspected data pirate, responded to the subscription request by a letter dated May 20, 1993. The letter noted that Law Bulletin was "already aware of concerns expressed by others in the industry that your company may be engaging in various forms of misconduct." Given these concerns, Law Bulletin sought assurances from LRP, stating in its letter "[i]f you are willing, however, to confirm that you would like to obtain our publication for your personal information only, and not for the purpose of copying, reproducing, or remarketing any portion of the publication or the selected information which it contains, I would be happy to enroll you as a subscriber." LRP did not reply to the

---

[1]Because Fiore was an employee of LRP, for convenience we often refer to defendants collectively as "LRP."

4

letter, and no subscription was entered. Sometime thereafter, Law Bulletin entered into two separate subscription agreements with "Fiore and Cohen," an entity[2] which, unbeknownst to Law Bulletin, operated out of LRP's Florida satellite office. Law Bulletin alleges that LRP's reporting of Illinois jury verdicts was based entirely on the information obtained through the Fiore subscriptions.

The suit, which was originally filed in state court in Cook County, Illinois, was removed by the defendants in December 1997 to the United States District Court for the Northern District of Illinois. In January 1998, the court ordered the case transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

Law Bulletin's complaint alleged causes of action for breach of contract (Count 1); violations of both the Illinois Consumer Fraud Act, 815 ILL. COMP. STAT. 505/2, and the Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/2, (Count 2); violations of the Lanham Act, 15 U.S.C. § 1125, (Count 3); and common law unfair competition (Count 4). On June 18, 1998, the district court granted partial summary judgment in favor of LRP, dismissing Counts 2 and 4 based on a finding that they were preempted by the Copyright Act of 1976, 17 U.S.C. § 301. The district court denied LRP's motion for summary judgment on

_____

[2]While listed in West Group's online legal directory, the complaint asserts that Fiore and Cohen is not an actual law firm. The rolls of the Florida bar show Fiore as a non-practicing attorney.

Law Bulletin's contract claim, holding that it was not preempted. As discovery progressed on the remaining claims, the district court recognized that "special problems" exist when competitors are engaged in a lawsuit "because it often appears that part of the strategy is to find out what the competitor is doing and using that for your economic advantage in the future." Therefore, in July 1998, the district court limited discovery to matters relating only to liability, staying discovery on matters relating to damages. On October 16, 1998, the district court granted in part LRP's motion for a protective order pursuant to Fed. R. Civ. P. 26(c). The October 16 order granted a protective order "as to [LRP]'s use of third-party jury verdict publications," based on a finding that the allegations in the complaint dealt only with LRP's improper use of Law Bulletin's jury verdict publications.

The matter was ultimately bifurcated, and, on March 1, 1999, the parties began a jury trial as to liability on Law Bulletin's breach of contract and Lanham Act claims. At the close of Law Bulletin's evidence, the court entered a directed verdict under Fed. R. Civ. P. 50(a) in favor of LRP on the Lanham Act claims. LRP rested without presenting evidence. The only question before the jury was whether the defendants had breached two form subscription agreements Fiore had

6

signed. Both subscription agreements contained a provision entitled "Law

Bulletin's Copyright Recognized," which provided in part,

> We will not make any copies of any reports or disks for which this subscription is for, recognizing that the Law Bulletin Publishing Company has a copyright interest in each. Under no circumstances will we furnish any copies, or any of the information contained therein, in bulk form to any third-party, and we will not computerize, record, reproduce or re-market any portion of the publication or the selected material which it contains.

The jury determined LRP had breached the subscription agreements, and the court entered judgment in favor of Law Bulletin as to liability on the breach of contract claim.

A second round of discovery began as to damages. The district court, upon motion by LRP and Fiore, determined that, under Florida law, Law Bulletin could not proceed against both LRP, the principal, and Fiore, LRP's agent. Law Bulletin filed a notice of intent to proceed against LRP, and Fiore was removed as a defendant. Once again, discovery disputes arose between the parties. After numerous motions and a hearing, the district court held that information relating to LRP's profits and other sensitive financial information was not discoverable.

A jury trial on the issue of damages was scheduled to begin January 18, 2000. On November 1, 1999, LRP moved for summary judgment as to damages. The district judge heard oral argument on the motion on December 15, and issued a

written ruling granting LRP's motion on December 23. According to the district court, Law Bulletin advanced two damage theories, seeking to recover damages based on its actual lost subscription sales and LRP's profits. The district court found that each of these theories failed as a matter of law. Because Law Bulletin had succeeded in proving liability, the district court awarded Law Bulletin nominal damages in the amount of $1.00.

Law Bulletin filed a timely appeal, Case No. 00-10387, challenging the dismissal of its state law and Lanham Act claims, the nominal damage award, and the district court's failure to order injunctive relief.[3] LRP filed a timely cross-appeal, Case No. 00-10654, arguing the district court erred in refusing to dismiss Law Bulletin's breach of contract claims based on either Copyright Act preemption or public policy grounds and in denying LRP's request for attorney's fees and costs as a prevailing party under the Lanham Act. On March 1, 2000, the district court entered an order granting Law Bulletin's request for costs under Fed. R. Civ. P. 54(d)(1). LRP appeals this order in Case No. 00-11461. The attorneys who represented Law Bulletin in the district court, Robert Kehoe, Jr. and Gene

---

[3]Law Bulletin's notice of appeal also challenges the district court's award of sanctions against it and its trial attorneys for violation of a discovery protection order. Law Bulletin does not separately address the issue in its brief, but rather adopts the joint *pro se* brief filed by its trial attorneys in Case Nos. 00-10370 and 00-10371. We will, therefore, include Law Bulletin's claims on this issue in our discussion of Case Nos. 00-10370 and 00-10371.

Lipscher, have also filed *pro se* appeals, Case Nos. 00-10370 and 00-10371, challenging sanctions the district court ordered against them personally for violation of a discovery protective order.

## A. Case No. 00-10387

### 1. Preemption of State Law Claims

Law Bulletin contends the district court erred in dismissing Counts 2 and 4 based on a finding that they were preempted by § 301 of the Copyright Act, 17 U.S.C. § 301. Law Bulletin claims the district court misconstrued its complaint in characterizing Counts 2 and 4 as resting solely on a "reverse passing off" theory. Law Bulletin asserts that these counts also encompassed claims of "acquisition misconduct" by LRP which are not preempted by the Copyright Act. Law Bulletin does not challenge the district court's finding of preemption with respect to Law Bulletin's "reverse passing off" claims in Counts 2 and 4. We believe Law Bulletin adequately pled claims of acquisition misconduct in its complaint by alleging LRP violated state law by "obtain[ing] a subscription to the Verdict Reporter by false pretense, knowing that [Law Bulletin] was willing to provide defendant LRP with a subscription only upon the safeguards described in Exhibit B [May 20, 1993 Letter]."

We review the district court's preemption determination *de novo*. Irving v. Mazda Motor Corp., 136 F.3d 764, 767 (11th Cir. 1998). The Copyright Act expressly preempts

> legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.

17 U.S.C. § 301(a). In Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983), this court recognized a two-part test to be applied in copyright preemption cases. Preemption occurs if the rights at issue (1) "fall within the 'subject matter of copyright' set forth in sections 102 and 103" and (2) "are 'equivalent to' the exclusive rights of section 106." Id.

On appeal, the parties agree the verdict reporters are not copyrightable. However, because the matter was decided on summary judgment, the district court assumed the verdict reporters satisfied the first prong based on the allegations in the complaint that the newsletters report "information in original editorial authorship that not only includes the selection, coordination, and arrangement of data that is of interest and importance to the trial bar but also includes substantial narrative authorship as to the reporting of the underlying events." In any event,

10

we find that the first prong of the preemption test is met.  The legislative history to

§ 301(a) states,

> As long as a work fits within one of the general subject matter
> categories of sections 102 and 103, the bill prevents the States from
> protecting it even if it fails to achieve Federal statutory copyright
> because it is too minimal or lacking in originality to qualify, or
> because it has fallen into the public domain.

H.R. REP. No. 94-1476, at 131 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5747.

As other circuits have recognized,

> one function of § 301(a) is to prevent states from giving special
> protection to works of authorship that Congress has decided should be
> in the public domain, which it can accomplish only if "subject matter
> of copyright" includes all works of a *type* covered by sections 102 and
> 103, even if federal law does not afford protection to them.

ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1453 (7th Cir. 1996) (emphasis in

original); *see also* Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 849-50

(2d Cir. 1997).  As the Supreme Court has noted, "it is beyond dispute that

compilations of facts are within the subject matter of copyright."  Feist Publ'ns,

Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991).  Therefore, even if

Law Bulletin's publications are not copyrightable, they are nevertheless within the

subject matter of copyright.

We turn then to the second prong of the preemption test to determine

whether Law Bulletin's acquisition misconduct claims encompass rights which are

11

equivalent to the exclusive rights of § 106. As this circuit has recognized, "the [Copyright] Act 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" Foley v. Luster, 249 F.3d 1281, 1285 (11th Cir. 2001) (quoting Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)). The exclusive rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works, and to distribute copies to the public. *See* 17 U.S.C. § 106. We employ an "extra element" test such that "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created case of action, then the right does not lie within the general scope of copyright and there is no preemption." Foley, 249 F.3d at 1285.

As previously noted, the complaint alleged that LRP "obtained a subscription to the Verdict Reporter by false pretense, knowing that [Law Bulletin] was willing to provide defendant LRP with a subscription only upon the safeguards described in Exhibit B [May 20, 1993 Letter]." The safeguards set out in the May 20, 1993 letter are as follows:

> If you are willing, however, to confirm that you would like to obtain
> our publication for your personal information only, and not for the
> purpose of copying, reproducing, or remarketing any portion of the
> publication or the selected information which it contains, I would be

12

happy to enroll you as a subscriber. Please return a signed copy of this letter as confirmation of your agreement to these terms and we will add you to the subscription rolls.

Clearly the rights Law Bulletin is attempting to protect in its acquisition misconduct claims are copyright rights. Furthermore, obtaining access to a work is a necessary condition to copying it. There is no extra element which would remove Law Bulletin's acquisition misconduct claims from the general scope of copyright. The district court did not err in determining that Counts 2 and 4 of Law Bulletin's complaint were preempted.

*2. Lanham Act Claims*

Law Bulletin next argues that the district court erred in entering judgment pursuant to Fed. R. Civ. P. 50(a) in favor of LRP on the Lanham Act claims. We review a Rule 50(a) judgment *de novo*. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1308 (11th Cir. 1998). In our review,

> we consider all the evidence in the light most favorable to the nonmoving party, and independently determine whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict. . . . If the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof, then the entry of judgment as a matter of law is appropriate.

Id. (internal quotations and citations omitted).

13

Count 3 of Law Bulletin's complaint alleged violations of both 15 U.S.C. § 1125(a)(1)(A) ("false designation of origin") and 15 U.S.C. § 1125(a)(1)(B) ("false advertising"). With respect to its false designation of origin claim, Law Bulletin asserts a "reverse passing off" theory, i.e., that LRP falsely held out its database as the product of its nationwide network of researchers when in fact the Illinois data had been pirated from Law Bulletin.[4] To prevail on a false designation of origin

---

[4]In its brief on appeal, Law Bulletin contends the district court erroneously precluded its second false designation of origin claim, that Law Bulletin's database consists of repackaged versions of cases taken from a number of regional reporters, by limiting discovery to evidence relating to LRP's use of Law Bulletin's materials and issuing a protective order as to LRP's use of third-party jury verdict publications. This claim is actually a challenge to the October 16, 1998 protective order, and we, therefore, review for abuse of discretion. McCarthy v. Barnett Bank of Polk County, 876 F.2d 89, 91 (11th Cir. 1989). Law Bulletin asserts that the district court "misconstrued the complaint as pleading only LRP's piracy from Law Bulletin" and not from third-party publishers. However, Law Bulletin itself, in its response to LRP's second motion for a protective order, described its complaint as raising

> two distinct claims against the defendant:
> 1) the defendant has pirated the plaintiff's material (in violation of the subscription contract) and is remarketing the plaintiff's material as the defendant's own workproduct (in a scheme of reverse palming off).
> 2) the defendant falsely advertises its national jury verdict product (which it markets in Illinois in competition with the plaintiff) as being the workproduct of LRP's own researchers and something that they have verified with all participating trial lawyers. In short, the defendant represents its goods to be of a certain source and quality, when that is not the case because the defendant assembles its database by pirating material from publishers all across the county [sic], just as it has from the plaintiff.

14

claim, a plaintiff must show it was either actually or likely to be damaged by the fact that the defendant used a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [wa]s likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *See* 15 U.S.C. § 1125(a)(1)(A).[5]

The district court correctly granted judgment pursuant to Rule 50(a) on Law Bulletin's "reverse passing off" claim because Law Bulletin failed to present any evidence as to the likelihood of confusion, an essential element of the claim. Law

---

Clearly, by Law Bulletin's own interpretation, its "reverse passing off" claim as presented in the complaint dealt only with the misuse of its own publication not with LRP's alleged piracy from third parties. The district court's limitation of discovery was not an abuse of discretion, and the district court's Rule 50(a) judgment on the "reverse passing off" claim cannot be reversed based on Law Bulletin's lack of discovery argument.

[5]Law Bulletin contends the district court erroneously believed proof of actual confusion, rather than just the likelihood of confusion, was required. Contrary to Law Bulletin's assertions, the record does not clearly indicate that the district court applied the wrong standard; in fact, a review of the entire record supports a finding that the district court correctly understood actual confusion was not an element of the "reverse passing off" claim. At the time the district court ruled on the "reverse passing off" claim, counsel for Law Bulletin expressly informed the court "the standard in the Lanham Act is not that there was actual confusion by [sic] the likelihood of confusion." In any event, because our *de novo* review reveals that judgment as a matter of law is appropriate, any alleged error by the district court is irrelevant.

Bulletin, citing Johnson v. Jones, 149 F.3d 494 (6th Cir. 1998), asserts that the likelihood of confusion is inherent given a showing that a defendant held out a plaintiff's product to be its own. Generally, courts in this circuit consider the following factors in assessing the likelihood of consumer confusion in Lanham Act trademark claims: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999). While we agree with the Johnson court's observation that a "reverse passing off" claim is "slightly different from the run-of-the-mill Lanham Act case," 149 F.3d. at 503, nothing in Johnson supports a conclusion that the factors set out in Frehling Enterprises must be completely disregarded. In fact, while noting that the factors dealing with the relationship between the plaintiff's and defendant's marks were irrelevant, the Johnson court considered the similarity of products, the similarity in marketing channels, and the similarity in customers. 149 F.3d at 503. As Law Bulletin notes, the determination of likelihood of confusion is a question of fact. E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1529 (11th Cir. 1985). Nevertheless, Law Bulletin does not point to any evidence presented at trial which would show the likelihood

16

of confusion other than the fact that LRP held out Law Bulletin's product as its own, a factor which will be present in any "reverse passing off" claim. Given this lack of evidence on an essential element, judgment as a matter of law is appropriate.

Law Bulletin's false advertising claim challenged two statements found in LRP's promotional material. The first statement was that LRP's database was "continuously updated by [its] national network of researchers." The second was, "All cases are verified with all participating attorneys." To succeed on its false advertising claim, Law Bulletin must show that it was or was likely to be damaged by the fact that LRP used a false representation of fact in commercial advertising which misrepresented "the nature, characteristics, qualities, or geographic origin of" its goods, services, or commercial activities. *See* 15 U.S.C. § 1125(a)(1)(B). In its motion for judgment as a matter of law, LRP asserted that Law Bulletin failed to present evidence of two essential elements – falsity and materiality. We need not address materiality, because we find Law Bulletin failed to present any evidence which would support a finding of falsity, and therefore, judgment as a matter of law is appropriate.

With respect to the first statement, that LRP's database was "continuously updated by [its] national network of researchers," Law Bulletin contends a jury

17

could have found that LRP's updating was done by lifting case information from publications of Law Bulletin and other third-party publishers. As support, Law Bulletin points to the testimony of LRP President Kenneth Kahn who stated Law Bulletin publications were "processed as a part of putting together [LRP's] database," as well as the fact that content taken from Law Bulletin's publications could be found in LRP's database as available on Westlaw. In its reply brief, Law Bulletin states, "the reality is that LRP merely repackaged what it obtained from other publishers through false pretenses." There was, however, no evidence to that effect. There was no evidence LRP did not maintain a national network of researchers. Law Bulletin produced as an exhibit at trial a copy of one of Law Bulletin's publications that had been found in LRP's files with highlighting and handwritten notations on it, and Kahn agreed, pursuant to questioning, that LRP possessed other copies of Law Bulletin publications in a similar manner and these copies exhibited similar markings. However, the testimony at trial was that LRP did not just take the newsletters and key the entries into its computer system. Moreover, the questioning of Kahn by Law Bulletin's counsel highlighted several examples of cases in which discrepancies existed between the information as reported in Law Bulletin's publications and LRP's versions. Law Bulletin failed to

present evidence which, if believed, would show LRP's database was not continuously updated by a nationwide network of researchers.

The second statement, "All cases are verified with all participating attorneys," appears only in advertisements for LRP's Personal Injury Valuation Handbook. As Law Bulletin concedes on appeal, there was no evidence presented at trial showing LRP failed to verify any of the cases in the Handbook. Law Bulletin instead asserts there was a jury question as to whether the statement applied only to the Handbook or to LRP's entire database. There was no evidence, however, from which a reasonable jury could conclude that the "All cases are verified" statement applied to the entire database. The advertisement upon which Law Bulletin most heavily relies is an advertisement for the Handbook which states, "With the handbooks you will have the most comprehensive nationwide database of personal jury verdicts, continuously updated by [LRP]'s national network of researchers. All cases are verified with all participating attorneys." Even though, as Law Bulletin points out, "[t]he statement about verification comes immediately after a statement about the database" (emphasis in original), the verification statement is a new and separate sentence. The statement was not used

19

in promotional material for LRP's other products.[6]  Law Bulletin presented no evidence linking the "All cases are verified" statement to anything other than the Handbook and has, therefore, failed to show that the second statement was false. Because both challenged statements are literally true and Law Bulletin put on no evidence to show the advertisements actually misled, deceived, or confused the consuming public, the district court correctly granted judgment as a matter of law on the false advertising claims.

Alternatively, Law Bulletin contends the Rule 50(a) judgment should be reversed because the district court erroneously restricted discovery, and as a result, Law Bulletin did not have a fair chance to marshal evidence that would have been sufficient to support its Lanham Act claims.  Law Bulletin asserts LRP's "aggressive tactics and dilatory compliance successfully precluded Law Bulletin from deposing a single current LRP employee."  Because of discovery disputes, the district court repeatedly extended the deadline for completing discovery.  In the end, discovery was left open until the trial date, Monday, March 1, 1999.  At a motions hearing on the afternoon of February 26, 1999, the parties addressed

---

[6]The testimony at trial made it clear that LRP's database itself was not available for sale, but several other products, including the CD-ROM, were created using the database and sold.   Further testimony showed that only a portion of LRP's database was accessible through the online research companies.

depositions of one former and several current LRP employees which were opposed by LRP. At the hearing, the district judge overruled LRP's objections, stating, "Well, we are going to trial on Monday. Take the depositions tomorrow. And I don't want anyone complaining they didn't get discovery." Law Bulletin did not move for a continuance at the hearing, but on appeal characterizes the district court's resolution as "an unrealistic mandate." On the morning of trial, counsel for Law Bulletin informed the court that the deposition of the former employee had been taken on the evening of February 26. However, counsel went on to state that no depositions had been taken of current LRP employees. Counsel requested that Law Bulletin be allowed to depose Joanne Fiore and Kenneth Kahn during breaks in the trial. The district judge responded that that would be fine, if the parties could work it out, but asked Law Bulletin, "Did you not think I was serious about my trial date? Did you wait too long?" Counsel for LRP then proceeded to detail the disputes the parties engaged in following the February 26 hearing regarding the depositions. The district judge interrupted, stating, "I don't want to hear any more of this really. I never should have let the discovery remain open until today. I just don't know what's going on in this case, but we're going to try it and get this case off the docket." LRP responded that it was ready to do that. The record does not indicate any response from Law Bulletin.

21

Law Bulletin contends it was an abuse of discretion for the district court not to postpone the trial to allow time for these depositions and other discovery. *See* Patterson v. United States Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990) ("Matters pertaining to discovery are committed to the sound discretion of the district court and, therefore, we review under an abuse of discretion standard."). As previously noted, Law Bulletin did not request a continuance either at the hearing or on the morning of trial; however, Law Bulletin asserts that in light of the district court's statements, any request for a continuance would have been futile. We do not believe the district court's failure to continue the trial *sua sponte* constitutes an abuse of discretion. Discovery had been left open until the day of trial. At the time the district judge resolved the final discovery disputes on February 26, Law Bulletin did not inform the court that it was "unrealistic" to expect the depositions to be completed before trial. Law Bulletin never indicated that it was not prepared to go to trial on March 1; in fact, it was Law Bulletin which proposed taking the Fiore and Kahn depositions during breaks in the trial. The district court's Rule 50(a) judgment on Law Bulletin's Lanham Act claims is affirmed.

*3. Denial of Injunctive Relief*

22

Law Bulletin further contends that the district court erred in failing to address its request for injunctive relief. In response, LRP asserts Law Bulletin abandoned its initial prayer for injunctive relief as set out in the complaint by failing to "develop and press" (emphasis in original) the issue before the district court. Counsel for Law Bulletin alluded to injunctive relief several times during the disputes which arose in the second round of discovery. At the hearing on LRP's motion for summary judgment as to damages, counsel for Law Bulletin stated,

> We have several forms of remedy that we're seeking. One is money damages, the other is injunctive relief. The motion today does not address the subject of injunctive relief, and I will not be talking about that. But, rather, this motion is seeking to enter partial summary judgment on one portion of the remedy aspect of the case.

The district court did not address injunctive relief in its order granting LRP's motion for summary judgment as to damages. However, following the order on the summary judgment motion, the district judge entered a Final Judgment which read as follows:

> . . . Considering this Court's Order Granting the Defendant's motion, an entry of Final Judgment is appropriate.
> THE COURT has considered the pertinent portions of the record and being otherwise fully advised, it is hereby
> ORDERED AND ADJUDGED that FINAL JUDGMENT IS HEREBY ENTERED on behalf of the Plaintiff. Plaintiff shall recover nominal damages in the amount of $1.00.

The Clerk of the Court shall CLOSE this Case and DENY all pending motions as MOOT.

We are satisfied that this order was indeed a final order, and therefore, appellate jurisdiction exists under 28 U.S.C. § 1291. Following the entry of the district court's order, Law Bulletin did not seek clarification as to the status of its prayer for injunctive relief or move to alter or amend the judgment. Therefore, we find that Law Bulletin abandoned its request for injunctive relief, and we will not address the matter on appeal.

*4. Damages*

Finally, Law Bulletin challenges the district court's nominal damage award. The district court granted summary judgment in favor of LRP on the damage issue, awarding Law Bulletin damages in the amount of $1.00. The parties agree Florida substantive law governs. Law Bulletin argues it is entitled to recover expectation damages which it characterizes as lost profits on the sales Law Bulletin could have made absent LRP's misconduct. Law Bulletin asserts that its damages should be measured by multiplying its standard fee for an online search by the number of searches conducted on the Illinois portion of LRP's database during the applicable time period.[7] In order to recover expectation damages, Law Bulletin must show

---

[7]This theory is based on Law Bulletin's contention, as articulated at the December 15, 1999 hearing on the summary judgment motion, that, other than

the following: (1) it sustained losses as a proximate result of LRP's breach of contract, (2) the loss is not remote, contingent, or conjectural and the damages can be proven with reasonable certainty, and (3) the damages were reasonably foreseeable to LRP at the time the contracts were made. *See* Frenz Enters., Inc. v. Port Everglades, 746 So.2d 498, 504 (Fla. Dist. Ct. App. 1999). The district court held that Law Bulletin failed to satisfy any of the three elements. Because the district court decided the damage issue on a motion for summary judgment, we review *de novo*. Skurstenis v. Jones, 236 F.3d 678, 681 (11th Cir. 2000).

Under Florida law, "[i]n order to recover for lost future profits, a party must prove income and expenses of the business for a reasonable time prior to the alleged breach. If the party presents evidence only of gross receipts or fails to prove expenses with some specificity," an award of damages cannot stand. Clayton v. Howard Johnson Franchise Sys. Inc., 954 F.2d 645, 652 (11th Cir. 1992) (citations omitted). "[T]he evidence must establish lost profits with reasonable certainty such that an impartial and prudent mind would be satisfied." Id. (citations omitted). The only evidence Law Bulletin presented to show lost

LRP, Law Bulletin is "the only game in town" with respect to online Illinois jury verdict information. Therefore, Law Bulletin asserts "if the defendant had not pirated and repackaged our Illinois data, that those customers who wanted to do searches related to Illinois data would, by necessity, have had to come to the plaintiff."

profits was the affidavit of Jeffery Bope, Executive Vice President of Law Bulletin.

Bope's affidavit stated that, prior to 1999, Law Bulletin charged $40 per search for

its online service. The fee was raised to $50 in 1999. Online customers also paid a

general access fee which Bope characterized as "nominal" and, therefore, not

included in Law Bulletin's damage claim. Bope stated that, at the time in question,

Law Bulletin had the capability to handle all of the searches that were conducted

on LRP's Illinois database without any additional expense to Law Bulletin.[8] Bope

asserted the entire $40-$50 search fee would have constituted additional net profit

to Law Bulletin. Law Bulletin did not present any evidence of past income or

expenses for its online business. Law Bulletin refused to turn over income and

expense information for its entire company based on the assertion that such was

irrelevant. While the jury verdict segment represented only a small portion of Law

Bulletin's business, the deposition testimony was that Law Bulletin did not keep

separate information regarding net profits from the jury verdict searches. In

opposing summary judgment, Law Bulletin did not produce any evidence of

historical income or expenses relating to the jury verdict product, instead choosing

to rely solely on the generalizations presented in Bope's affidavit. This evidence is

[8]Because discovery as to LRP's actual sales was limited by the district court, Law Bulletin based its damage claim on projections of LRP's sales.

26

not sufficient under Florida law to create a genuine issue of material fact as to lost profits. Summary judgment is appropriate.

Law Bulletin further asserts the district court erred in granting summary judgment while there were discovery motions pending. The pending motions, however, dealt only with Law Bulletin's attempt to obtain discovery from LRP. As previously discussed, it was Law Bulletin's failure to produce evidence relating to its own income and expenses which defeated its damage claim. The discovery requested in the pending motions would not have produced a genuine issue of material fact, and therefore, the district court did not err in granting summary judgment while the motions were pending. *See* Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 n.2 (11th Cir. 2001).

## B. Case No. 00-10654

On cross-appeal, LRP argues that the district court erred in holding that Law Bulletin's contract claim was not preempted by the Copyright Act. In its June 18, 1998 order on LRP's motion for summary judgment, the district court characterized the contract claim as an alleged breach of an agreement occasioned by the delivery of copyrighted materials. While it is clear that Law Bulletin did not have a copyright right in the material at issue, applying the principles of copyright

preemption set forth in our discussion of Case No. 00-10387 and a *de novo* standard of review, we affirm the ruling of the district court.

Because the material at issue is within the subject matter of copyright, resolution of this issue hinges on the equivalency prong of the preemption test. LRP asserts that, because the subscription agreements dealt only with copying and redistribution of the materials, Law Bulletin's contract claim is preempted. LRP points out that the clause at issue was entitled "Law Bulletin's Copyright Recognized," a fact which LRP asserts demonstrates a clear attempt to circumvent federal copyright law by utilizing state law to enforce a self-created "copyright." However, the mere fact that Law Bulletin misrepresented its interest in the material as a "copyright" does not alter the fact that, through its breach of contract claim, Law Bulletin sought to enforce rights created by a simple two-party contract, not copyright rights. As the Seventh Circuit has stated, claims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties. ProCD, 86 F.3d at 1454-55; *but see*, Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 457 (6th Cir. 2001) ("If the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted."). We find the Seventh Circuit's reasoning to be persuasive. As the ProCD opinion recognizes, courts

28

generally read preemption clauses to leave private contracts unaffected. ProCD, 86 F.3d at 1454-55 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995)). The subscription agreements do not remove any information from the public domain, and the rights created by the agreements are not exclusive rights. The rights sought to be enforced in Law Bulletin's breach of contract claim are not equivalent to the exclusive rights of § 106, and, in order to succeed on its claim, Law Bulletin needed to show an extra element, the existence of a valid contract between the parties. The district court was correct in holding that Law Bulletin's breach of contract claim was not preempted.

LRP further contends that the district court should have dismissed the contract claim based on public policy grounds. This argument fails as well. The subscription agreements do not remove any information from the public domain. Anyone is free to collect and disseminate the information on jury verdicts in Illinois. While LRP cites cases involving breaches of confidentiality agreements, the subscription agreements in the present case are not invalidated merely because the information is publicly available. *See* Aronson v. Quick Point Pencil Co., 440 U.S. 257 (1979) (holding royalty contract enforceable even though federal law offered no protection against third-party use of intellectual property).

Finally, LRP argues it was entitled to attorney's fees and expenses as a

prevailing party under the Lanham Act.[9]   Under the Lanham Act, "[t]he court in

---

[9]LRP also contends the district court erred in denying its requests for attorney's fees pursuant to the court's inherent powers, Fed. R. Civ. P. 11, and 28 U.S.C. § 1927.  We review for abuse of discretion.  Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991) (court's inherent powers); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11 sanctions); McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001) (28 U.S.C. § 1927 sanctions).  While LRP recognizes this correct standard of review in its Statement of the Standard of Review, its entire argument on the issue in its opening brief is as follows:

> C.  The District Court Erred by Denying LRP's Other Requests for Attorneys' Fees and Costs.
>
> LRP also requested attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and the district court's inherent powers.  Additionally, Rule 11 applies given Law Bulletin's failure to prove it suffered any injury or damage. [citations omitted]
> LRP respectfully requests that this Court reverse the district court's decisions and remand with instructions for the district court to further consider the amount of attorneys' fees and expenses to which LRP is entitled.

LRP's reply brief addresses only Rule 11 sanctions.  Therefore, LRP has waived an appellate challenge to the denial of sanctions under 28 U.S.C. § 1927 or the court's inherent powers by failing to make any attempt to show an abuse of discretion by the district court on these issues.  See Denney v. City of Albany, 247 F.2d 1172, 1182 (11th Cir. 2001).  With respect to Rule 11 sanctions, LRP does not discuss the district court's analysis on the issue.  Under the abuse of discretion standard, "we must affirm unless we at least determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard."  Maiz v. Virani, 253 F.3d 641, 662 (11th Cir. 2001) (internal quotations and citations omitted).  LRP fails to show the district court's refusal to award Rule 11 sanctions was either a clear error of judgment or the result of the application of an erroneous legal standard, and we, therefore, affirm.

30

exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Following the district court's grant of judgment as a matter of law on Law Bulletin's Lanham Act claims, LRP moved for attorney's fees under 15 U.S.C. § 1117(a).[10] The district court denied LRP's motion, finding LRP failed to make a showing that the case was an exceptional one.

"Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court." Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994). We will affirm unless the district court made a clear error of judgment or applied an incorrect legal standard. Maiz, 253 F.3d at 662. LRP first claims the district court incorrectly applied a "bad faith" standard in refusing to award Lanham Act fees when the correct standard was "something less than bad faith." In its order, the district court stated, "[A]bsent a showing of fraud or bad faith, attorneys' fees are generally not awarded under [15 U.S.C. § 1117(a)]. Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 363 (11th Cir. 1997); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160 (11th Cir. 1982)." The Lone Star

---

[10]While an exceptional case is characterized as one in which "the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful,'" the legislative history to the Lanham Act makes it clear that attorney's fees are also available to prevailing defendants in "exceptional" cases. H.R. REP. No. 93-524 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133.

Steakhouse case, in which a prevailing defendant sought Lanham Act fees, repeated the general rule, "[E]xceptional cases are those where the infringing party acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful' manner." 106 F.3d at 363 (internal quotations and citations omitted). The Safeway case, which dealt with the denial of Lanham Act attorney's fees to a prevailing defendant, held such an award "should be made only in exceptional circumstances and on evidence of fraud or bad faith." 675 F.2d at 1169.

LRP asserts that the Eleventh Circuit has not expressly analyzed the applicability of a "something less than bad faith" standard to Lanham Act cases in which the defendant prevails and urges this panel to adopt this more lenient standard. While some circuits require an unqualified showing of bad faith, irrespective of which party prevails, other circuits have allowed prevailing defendants to recover Lanham Act fees upon a showing of "something less than bad faith." *See* Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992) (collecting cases); *see also* Door Sys., Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1032 (7th Cir. 1997) ("between good faith as a safe harbor and deliberateness as an automatic basis for awarding fees is the category of oppressive suits, fairly described as exceptional, in which the case for an award of fees to the defendant is compelling"). We believe that under Safeway, the correct

standard in the Eleventh Circuit is fraud or bad faith.  However, given the district

court's express findings, LRP's claim would fail, even under the more lenient

standard.  We therefore leave the determination as to the continued validity of

Safeway to another case.

LRP contends that Law Bulletin's Lanham Act claims utterly lacked merit.

The district court, however, found Law Bulletin presented enough evidence to

withstand LRP's numerous motions to dismiss and to warrant a trial.  It was LRP's

arguments in support of its motion for Lanham Act fees that the district court

labeled as "wholly without merit."  LRP further asserts that Law Bulletin

improperly prosecuted the case as a part of a "competitive ploy" to advance Law

Bulletin's Strategic Business Plan.  In its motion for Lanham Act fees, LRP

characterized this "competitive ploy" as evidence of bad faith and an attempt "to

improperly harass Defendant LRP by seeking competitive information."  The

district court rejected these arguments, finding Law Bulletin had not brought the

case in bad faith or for purposes of harassing LRP.  LRP fails to show the district

court abused its discretion in finding that Law Bulletin's claims did not completely

lack substance or in holding that the suit was not part of a "competitive ploy" by

Law Bulletin.  LRP cites no other factors which could support a finding of

33

exceptionality.  The district court's denial of LRP's request for Lanham Act fees is affirmed.

## C.  Case No. 00-11461

LRP contends that the district court erred by awarding costs to Law Bulletin as a prevailing party under Fed. R. Civ. P. 54(d)(1)[11] and asks this panel to remand the case with instructions for the district court to award Rule 54(d) costs in favor of LRP.  "We review the factual findings underlying a district court's determination regarding prevailing party status for clear error.  Whether the facts as found suffice to render the plaintiff a 'prevailing party' is a legal question reviewed *de novo*." Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd., 254 F.3d 987, 1012 (11th Cir. 2001) (internal quotations and citations omitted).

We note at the outset that LRP's argument on this issue is strikingly underdeveloped.  LRP provides no rationale for its request that costs be awarded in its favor.  As the district court noted in response to LRP's motion for Rule 54 costs, LRP is the non-prevailing party under Rule 54 and there is no discretion for an award of fees to a non-prevailing party.  LRP argues that a plaintiff who

_____

[11]Rule 54(d)(1) provides, "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."

receives only nominal damages is not necessarily entitled to Rule 54 costs and asserts, without support or analysis, that the district court erred by holding that Law Bulletin was the prevailing party. The definition of a "prevailing party" is well-established in this circuit.

> To be a prevailing party [a] party need not prevail on all issues to justify a full award of costs, however. Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d). . . . A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims. . . . Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.

Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995) (internal quotations and citations omitted). As the district court correctly noted, the jury returned a verdict in favor of Law Bulletin as to liability, and while the damage award was nominal, the district court entered final judgment in Law Bulletin's favor as to damages. The district court did not err in finding Law Bulletin to be the prevailing party for Rule 54 purposes.

We turn next to LRP's contention that a prevailing party who recovers only nominal damages is "not necessarily entitled to its costs" under Rule 54. LRP cites only one case which is at all on point and that case expressly recognizes that the decision to reduce or deny Rule 54 costs based on the fact the prevailing party obtained only a nominal victory is within the "substantial discretion" of the district

35

court.  Richmond v. Southwire Co., 980 F.2d 518, 520 (8th Cir. 1992).  LRP makes no attempt to show the district court abused its discretion in refusing to reduce or deny costs in favor of Law Bulletin, and our independent review reveals no abuse of discretion.  The district court's award of costs in favor of Law Bulletin is affirmed.

**D.  Case Nos. 00-10370 and 00-10371**

On January 15, 1999, the district court sanctioned Law Bulletin and its legal counsel Kehoe and Lipscher for failing to return documents subject to the October 16, 1998 protective order granted by the district court.  The protective order was issued by the district court following a dispute between the parties concerning the scope of a subpoena *duces tecum.*  The protective order narrowed the scope of the subpoena to documents that related specifically to LRP's use of Law Bulletin's jury verdict publications.  The district court noted that documents involving LRP's dealings with third parties were protected under the order.

Approximately a month after the district court issued the protective order, LRP's bank, First Union, produced ninety-eight documents at the request of Law Bulletin's counsel.  On December 1, 1998, LRP learned of First Union's production.  Believing that many of the documents produced were protected by the court order, LRP demanded their immediate return.  Law Bulletin did not

immediately return the documents and instead asked LRP for time to investigate which documents were in violation of the protective order.  LRP found this response to be unacceptable and, on December 3, 1998, notified Law Bulletin that if the documents were not returned by overnight mail it would seek immediate relief from the district court.  On December 4, 1998, LRP moved for an order compelling the immediate return of the protected documents and for sanctions against Law Bulletin and its counsel.

On December 9, 1998, the district court convened an emergency hearing on LRP's motion.  At the conclusion of the hearing, the court ordered Law Bulletin to turn over the documents produced by First Union for an *in camera* inspection. After the inspection, the district court ruled that ninety-two of the ninety-eight documents were clearly subject to the court's protective order and that Law Bulletin's failure to return the documents was a direct violation of the order.  The court construed LRP's motion for sanctions as falling under Fed. R. Civ. P. 37(b)(2) and awarded LRP its reasonable attorney's fees, costs, and expenses in connection with the motion.  The court expressly found that, under the circumstances, it was not necessary to hold either Law Bulletin or its counsel in contempt.  Appellants filed a motion to vacate, alter, or amend the sanctions order, which the district court denied.  LRP submitted a petition for fees and expenses in

the amount of $25,126.24. The district court found LRP's requested amount to be unreasonable and imposed sanctions in the amount of $7,960.24 against Law Bulletin, Lipscher, and Kehoe, jointly and severally.

In their *pro se* brief on appeal, which was adopted by Law Bulletin, Lipscher and Kehoe submit three arguments. First, they contend the district court committed legal error when it construed the ambiguous protective order as being unmistakably clear. Second, they assert the district court abused its discretion under Rule 37 because their failure to return the documents had been "substantially justified" and the award of sanctions would be "unjust" under the circumstances. Finally, they argue that the court erred when it invoked Rule 37 as authority to issue sanctions in this situation because, they contend, Rule 37 applies only upon failure to make court-ordered discovery, not in cases involving noncompliance with a protective order.

We begin by addressing appellants' third argument. The question of whether Rule 37(b)(2) allows for sanctions for violations of protective orders is a matter of first impression in this circuit.[12] Appellants contend both the plain

_____

[12]Without expressly analyzing whether Rule 37(b) applied, the Ninth Circuit, in Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 784 (9th Cir. 1983), held that failure to comply with the terms of a protective discovery order exposed both the party and its counsel "to liability under Rule 37(b)(2) for the resulting costs and attorney's fees." *See also* United States v. Nat'l Med. Enters.,

language and the context of Rule 37 demonstrate that the rule does not authorize

fee shifting in disputes over Rule 26(c) protective orders.   LRP submits the district

court properly awarded sanctions under Rule 37(b)(2) pointing out that although

the rule does not specifically provide for sanctions in this situation, the language of

the Advisory Committee Notes to Rule 37 shows that the rule was intended to

include the type of protective order issued in this case.

Rule 37(b)(2) does not mention Rule 26(c) protective orders, but rather

states that it applies when a party "fails to obey an order to provide or permit

discovery, including an order made under subdivision (a) of this rule or Rule 35, or

if a party fails to obey an order entered under Rule 26(f)."  To support the district

court's ruling, LRP points to the Advisory Committee Notes on the 1970

Amendments to Rule 37, which read in part as follows:

> The scope of Rule 37(b)(2) is broadened by extending it to include
> any order "to provide or permit discovery," including orders issued
> under Rules 37(a) and 35.  Various rules authorize orders for
> discovery – *e.g.*, Rule 35(b)(1), Rule 26(c) as revised, Rule 37(d). . . .
> Rule 37(b)(2) should provide comprehensively for enforcement of all
> these orders.

LRP argues that the Advisory Committee Notes' reference to Rule 26(c)

encompasses Rule 26(c) protective orders.  However, the Notes refer to Rule 26(c)

---

Inc., 792 F.2d 906 (9th Cir. 1986) (upholding grant of sanctions under Rule 37(b)
for violation of a protective order).

only in connection with rules authorizing "orders **for discovery**" (emphasis added). Under Rule 26(c), "[i]f the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery." This type of order clearly qualifies as an order "for discovery" under Rule 26(c). In contrast, a Rule 26(c) protective order is not "an order to provide or permit discovery," and therefore, such orders do not fall within the scope of Rule 37(b)(2). *See* Fed. R. Civ. P. 37(b)(2); *see also* Coleman v. Am. Red Cross, 23 F.3d 1091, 1098-99 (6th Cir. 1994) (Ryan, J. dissenting) (stating that Rule 37(b) has "nothing to do with protective orders" or Rule 26(c)).

Because the district court did not invoke its inherent powers in awarding the sanctions, we need not speculate as to whether these powers could justify the sanctions in this case. *See* Peterson v. BMI Refractories, 124 F.3d 1386, 1395 n.5 (11th Cir. 1997). Similarly, while monetary sanctions in the form of attorney's fees are proper upon a finding of contempt, *see* Abbott Labs. v. Unlimited Beverages, Inc., 218 F.3d 1238, 1242 (11th Cir. 2000), the district court expressly declined to find appellants in contempt. Therefore, the district court's order granting attorney's fees, costs, and expenses against Law Bulletin, Lipscher, and

40

Kehoe must be reversed, and we need not address appellants' other arguments on this point.

## E.  Conclusion

For the reasons stated above, the district court's order granting sanctions against Law Bulletin, Lipscher, and Kehoe is REVERSED, and this issue is REMANDED to the district court for further proceedings consistent with this opinion.  The district court is AFFIRMED on all other issues.  The parties shall bear their own costs.